IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| James Lee Brown, | Case No. 4:12 CV 119 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Robert Farley, | |
| Respondent. | |

## INTRODUCTION

*Pro se* Petitioner James Lee Brown filed this action for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) while incarcerated at the Elkton, Ohio Federal Correctional Institution ("FCI Elkton"). He names FCI Elkton Warden Robert Farley as Respondent. In March 2012, Petitioner filed an Address Change Notice confirming he is now incarcerated at Federal Prison Camp in Yankton, South Dakota ("FPC Yankton") (Doc. 5). Petitioner argues his placement at a halfway house while on bail pending trial constitutes "official detention" under federal law, and requests 214 days of credit on his sentence. For reasons set forth below, the Petition is denied.

## BACKGROUND

Petitioner was indicted on six counts of narcotics violations in the Southern District of Iowa. *See United States v. Brown,* No. 4:08cr0065 (S.D. Iowa filed Apr. 22, 2008), www.pacer.gov. After his arraignment, the Magistrate Judge issued an order setting conditions of release, and Petitioner agreed to reside at a halfway house or community corrections center as one of those conditions (Iowa Doc. 12 at 2). In August 2008, another indictment was filed naming Petitioner as a defendant. *See*

*United States v. White, et al.*, No. 4:08cr0066 (S.D. Iowa). The Magistrate Judge consolidated both cases (4:08cr0065 and 4:08cr0066) on August 27, 2008 (Iowa Doc. 38).

In early December 2008, Petitioner filed an application to modify his conditions of release. Petitioner specifically requested the court modify his conditions so as to not require residence at the Fort Des Moines Residential Facility (Iowa Doc. 57). The court granted the request and allowed Petitioner to reside at a private third-party residence (Iowa Doc. 72).

Petitioner pled guilty to conspiracy to distribute narcotics and possession of a firearm in March 2009 (Iowa Doc. 121). He was sentenced to 138 months in prison (Iowa Doc. 147), and his projected release date is March 13, 2019. *See* http://www.bop.gov/iloc2/LocateInmate.jsp. On June 26, 2011, Petitioner requested a sentence credit from May 16, 2008 through March 29, 2009 -- the period of time Petitioner believed he was in custody at the "Fort Des Moines Correctional Facility" (Doc. 1-2). The request was fully exhausted through the Bureau of Prisons' ("BOP") administrative process, and denied at every level (Doc. 1-2).

According to the BOP, Petitioner was released on May 18, 2008, on a personal recognizance bond with pretrial supervision (Doc. 1-2 at 4). Petitioner was not in official detention for purposes of receiving credit under 18 U.S.C. §3585(b) because residence at the Fort Des Moines facility -- a halfway house -- was a condition of his release (Doc. 1-2 at 4, 7 & 10).

Petitioner now requests this Court grant 214 days credit to his federal sentence, from May 16, 2008, until December 15, 2008. He no longer seeks credit from December 15, 2008, to March 29, 2009, because he now admits he was transferred "to the care and custody of a person in the community [after leaving] Fort Des Moines Correctional Facility" on December 15, 2008 (Doc. 1-1 at 5 & 8).

2

In challenging the BOP's denial of his request for credit, Petitioner contends the conditions of his confinement at Fort Des Moines were analogous to a prison setting. He states that while Fort Des Moines offers halfway house and treatment services, he did not participate in those programs (Doc. 1-1 at 7). Instead, Petitioner asserts he was in lockdown 24 hours a day, 7 days a week, and complains his "treatment" was no different than what he would have experienced at a county jail or FCI Elkton (Doc. 1-1 at 7). Petitioner criticizes the BOP's reliance on *Reno v. Koray*, 515 U.S. 50 (1995), because that case involved a challenge to confinement at a halfway house or treatment center. According to Petitioner, Fort Des Moines is a correctional facility and, as such, maintains he is entitled to credit on his sentence for time spent there under 18 U.S.C. § 3585 (Doc. 1-1 at 7).

### **STANDARD OF REVIEW**

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

## DISCUSSION

As an initial matter, Petitioner's transfer to FPC Yankton does not affect this Court's subject matter jurisdiction over the case. *See Cohen v. United States*, 593 F.2d 766, 767 n.2 (6th Cir. 1979). For habeas purposes, a petitioner's "custody" status is determined at the time the petition is filed. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). When Petitioner filed his Petition, he was incarcerated at FCI Elkton, and this Court had personal jurisdiction over his custodian, Respondent Farley. Because jurisdiction over Petitioner's custodian was proper when this matter was filed, Petitioner's subsequent transfer is of no consequence. *See* 28 U.S.C. § 2243; *see Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494-95 (1973).

Once a defendant is sentenced in federal court, the Attorney General, through the BOP, is responsible for administering the sentence. *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed."). In fulfilling this duty, the BOP calculates how much of the sentence a defendant actually has left to serve. Federal offenders have a right to prison credit under 18 U.S.C. § 3585(b), but district courts cannot determine the amount of credit at sentencing. Instead, the Attorney General must make the determination as an administrative matter when imprisoning each defendant. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001) ("Power to grant credit for time served lies solely with Attorney General and Bureau of Prisons.").

Specifically, Section 383(b) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

The issue in this case centers on whether Petitioner was in "official detention" while residing at the Fort Des Moines Residential Facility. There is a simple answer. In *Koray*, the Supreme Court clarified when a prisoner resides at a halfway house or community treatment center after being "released" on bail, he or she is *not* officially detained per Section 3585(b). *Koray*, 515 U.S. at 57–61, 65 ( "[D]efendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'"). In doing so, the Court recognized that "a defendant 'released' to a community treatment center could be subject to restraints which do not materially differ from those imposed on a 'detained' defendant committed to the custody of the Attorney General . . . ." *Id.* at 62–63. But, the Court reasoned, a significant distinction exists between all defendants released on bail, and those committed to the custody of the Attorney General. *Id.* at 63. Namely, detained defendants -- unlike those released on bail -- "*always remain subject to the control of the [BOP]*." *Id.* (citation omitted, emphasis in original). For instance, detained defendants "are subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system . . . and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement." *Id.*

5

Like the prisoner in *Koray*, Petitioner was released on bail pending trial by a magistrate's "release order" pursuant to the Bail Reform Act, 18 U.S.C. § 3142(b). The order required Petitioner to "maintain residence at a halfway house or community corrections center" (Iowa Doc.12 at 2), a term to which Petitioner explicitly agreed. Restrictive conditions notwithstanding, Petitioner was not in "official detention" and is not entitled to credit under 18 U.S.C. § 3585.

Even if *Koray* did not bar Petitioner's claim, his contention that Fort Des Moines is essentially a prison is unsupported by the record. Contrary to his claim of being under a 24-hour lockdown, his daily curfew only required him to remain at Fort Des Moines from 9 p.m. to 6 a.m.(Iowa Doc.12 at 2). Moreover, in September 2008, a magistrate judge granted Petitioner's motion to modify the conditions of his release, permitting him to leave the Fort Des Moines facility to travel to Springfield, Illinois, to work on a roofing project for his employer (Iowa Doc. 28). Petitioner was released for work purposes to the third-party custody of his supervisor until "completion of the Springfield roofing project, or not later than October 20, 2008" (Iowa Doc. 28). Under the terms of this modification, Petitioner's curfew was expanded to require he "be in his hotel room between the hours of 10:00 p.m. and 6:00 a.m. each day" (Iowa Doc. 28 at 2).

Petitioner's argument is further undermined by his repeated acknowledgment throughout the administrative review process that Fort Des Moines was, in fact, a halfway house. For instance, in Petitioner's original request for credit, he stated that "while on pretrial release" he was at Fort Des Moines, "which is a <u>half way house</u>" (Doc. 1-2 at 3). Notably, Petitioner underlined the phrase "half way house," presumably for emphasis. He used the same underlined phrase in his regional appeal (Doc 1-2 at 5), and a similar phrase in his central office administrative appeal, even after revising his

6

argument. In short, the record shows that even Petitioner acknowledges Fort Des Moines is "a Federal halfway house" (Doc. 1-2 at 8).

## CONCLUSION

For the foregoing reasons, the Petition is denied and this action is dismissed pursuant to 28 U.S.C. § 2243. Further, under 28 U.S.C. § 1915(a)(3), this Court certifies that an appeal could not be taken in good faith.

IT IS SO ORDERED.

                                                        s/ *Jack Zouhary*
                                                        JACK ZOUHARY
                                                        U. S. DISTRICT JUDGE

                                                        September 12, 2012